IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

KEVIN ROBERTSON,

                Plaintiff,

v.                                CIVIL ACTION NO.   3:16-3846

NANCY A. BERRYHILL, in her
official capacity as Acting Commissioner
of the Social Security Administration,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 36) pursuant to Federal Rule 12(b)(6). The motion has been fully briefed and is now ripe for review. For the following reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** all of Plaintiff's claims.

**I.      Background**

This case challenges the redetermination procedure initiated by the Social Security Administration (SSA) in accordance with statutory guidelines. After originally being denied benefits, Mr. Kevin Robertson was awarded Title II disability benefits [1] on appeal by Administrative Law Judge (ALJ) David B. Daugherty on December 3, 2010. *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶¶ 35, 39. On his appeal, Robertson sought the assistance of Attorney

---

[1] Title II serves as a disability insurance program that awards benefits without considering a claimant's financial need, whereas Title XVI serves as a welfare program to provide benefits to "financially needy individuals." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988).

Eric C. Conn.  *Id.* at ¶ 35.  David P. Herr, D.O., evaluated Robertson, and the subsequent medical report was included in Robertson's file submitted to ALJ Daugherty.[2]  *Id.*

The Office of the Inspector General (OIG) began investigations on disability cases filed with the SSA by Conn, or Conn's law firm, and those decided by ALJ Daugherty.  *Id.* at ¶¶ 12-13.  The OIG notified the SSA that there was reason to believe that fraud or similar fault was involved in disability benefits applications submitted by Conn that contained evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., and David P. Herr, D.O.  *Id.* at ¶¶ 16-17.  By memorandum, the OIG notified the SSA that they could proceed with the redetermination process on 1,787 individuals who used Conn's law firm and one of the listed doctors in receiving benefits.  *Id.* at ¶ 18.  This notice, dated May 12, 2015, initiated the redetermination process under challenge here.  *Id.*

### a.  Social Security Act Redetermination Process

The Social Security Act (the Act) describes the redetermination process the SSA must undertake when referred to by the OIG or when the SSA uncovers fraud itself.  By statutory mandate, as soon as the OIG "has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits", the OIG must refer the information, including the individual claimant at issue, to the SSA.  *See* 42 U.S.C. § 1320a-8(1).  After this referral, or when the SSA through its own investigation has reason to believe fraud or similar fault is involved, the

---

[2] Plaintiff's complaint specifies that the doctor who evaluated him was Dr. Bradley Adkins.  *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 35.  However, Defendant explains that the notice to Plaintiff regarding the required exclusion of certain doctors' evidence and the second ALJ decision reference excluded evidence from David P. Herr, D.O.—not Dr. Adkins.  *See Def.'s Mem. in Supp.*, ECF No. 37, at 7; *Notice of Appeals Council Action*, ECF No. 23; and *ALJ Decision*, ECF No. 36-1, at 8.  Plaintiff appears to agree with this factual correction as Plaintiff's Response argues that Dr. Herr was the consulting physician in Plaintiff's case.  *Pl.'s Resp.*, ECF No. 38, at 4.  For purposes of this opinion and because both parties now agree, the Court will address the consulting physician as Dr. Herr.

SSA "shall immediately redetermine" those cases involving fraud or similar fault.   42 U.S.C. §

405(u)(1)(A).   In the redetermination process, the SSA "shall disregard any evidence if there is

reason to believe that fraud or similar fault was involved in the providing of such evidence."   42

U.S.C. § 405(u)(1)(B).

Pursuant to this statutory scheme, the SSA sent letters on or around May 18, 2015 to most

of the individuals involved in these affected cases, including Robertson, because they had received

Conn's, or Conn's law firm's, representation.   *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 19.

The notices specified that the claimants' benefits would be redetermined without the use of

medical evidence submitted by Adkins, Ammisetty, Huffnagle, or Herr.   *Id.*   If the Appeals

Council decided that the evidence remaining in the file did not support the previous favorable

decision, the SSA would refer the case back to an ALJ for a new decision.   *Id.* at ¶ 20.   The ALJ

could not consider any of the medical evidence tainted by the suspected fraud or similar fault.   *Id.*

Claimants had ten days to submit new evidence demonstrating disability at the time of the original

benefits award, which the ALJ would consider in redetermination.   *Id.*

A redetermination hearing decides whether the disability claimant qualified for benefits at

the time of the original application.   *See* Hearings, Appeals, & Litigation Law Manual (HALLEX)

I-1-3-25(C)(3) ("[A]n adjudicator will be directed to consider the claim(s) only through the date

of the final and binding determination or decision on the beneficiary's or recipient's application

for benefits.").   The adjudicator's decision must rely only on new evidence and evidence

remaining in the file after excluding the tainted evidence as mandated by § 405(u).   HALLEX I-

1-3-25(C)(4)(c).   Interpreting the language in § 405(u), HALLEX provides that "adjudicators do

not have discretion to reconsider the issue of whether the identified evidence should be disregarded

when based on an OIG referral …."   HALLEX I-1-3-25(C)(4)(a).   A claimant can appeal the

adjudicator's decision to discontinue disability benefits, but when based on an OIG referral, "the beneficiary or recipient may not appeal the agency's statutory mandate to conduct the redetermination or to disregard evidence …."   HALLEX I-1-3-25(C)(6).

While conducting the redetermination process with various claimants, several rulings have clarified when an ALJ could consider evidence from the prohibited doctors.   *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 23.   If the doctor was a treating health care provider and the submitted evidence contained treatment notes, the information was admissible.   *Id.*   If the doctor's medical report was included outside the investigated time frame of January 2007 to May 2011, the evidence was admissible.   *Id.*   If the evidence from the doctors was not elicited by Conn or Conn's law firm, the evidence was admissible.   *Id.*   Thus, the SSA would only disregard the evidence when the information was obtained by a non-treating physician, when the evidence was collected within the investigatory time frame, and when the doctor was retained by Conn or Conn's law firm.

### b.  Robertson's Background

Robertson worked for approximately twenty years as a land surveyor before experiencing disabling mood swings and panic attacks that prevented his work starting in 2006.   *Id.* at ¶ 34. Robertson applied for disability benefits, but an ALJ issued an unfavorable decision in April of 2010.   *Id.* at ¶ 35.   On his appeal, Robertson retained Conn and had a consultation with Dr. Herr. *Id.*   ALJ Daugherty awarded Robertson benefits in December of 2010, and that decision became the SSA's final decision.   *Id.* at ¶ 39.   On or about May 22, 2015, Robertson received a notice from the SSA that his benefits were suspended for reason to believe that there was fraud in disability cases involving medical records from Adkins, Ammisetty, Huffnagle, and Herr.   *Id.* at ¶ 40.   The notice advised Robertson that any medical evidence from these doctors would be

disregarded from his file, but Robertson could submit new medical information and other evidence supporting his disability within ten days.   *Id.* at ¶ 41.

Robertson attended the redetermination hearing in front of a new ALJ on October 18, 2015. *Id.* at ¶ 42.   The ALJ determined that the remaining evidence in Robertson's file was insufficient to establish disability from 2009 and terminated Robertson's benefits.   *Id.* at ¶¶ 42-44.   The Appeals Council affirmed the ALJ's decision, and Robertson timely brought this appeal for judicial review.   *Id.*

### c.  Procedural History

Robertson filed the instant case on April 22, 2016.   *Pl.'s Compl.*, ECF No. 2.   The original complaint sought federal jurisdiction under 42 U.S.C. § 405(g).   *Id.* at ¶ 3.   The case challenged the redetermination process as violating the Act, the Fifth Amendment of the Constitution, and the Administrative Procedure Act (APA).   *Id.* at ¶¶ 8, 10, 12.   The fourth count specifically challenged the unfavorable decision of the ALJ as being unsupported by substantial evidence.   *Id.* at ¶ 14.

Robertson had previously filed another case, brought as a class action, in this district challenging the process of redeterminations.   *See Robertson v. Colvin* (*Robertson I*), No. 3:16-cv-2113 (S.D.W. Va.).   That case was dismissed by this Court, in part to prevent improper claim splitting.   *See Robertson I*, Civ. No. 3:16-2113, 2016 WL 5853725, at *7-8 (S.D.W. Va. Oct. 5, 2016).   Robertson subsequently amended the instant complaint to include class action allegations and more fully detail the procedural challenges to replicate the dismissed case.   *See Pl.'s First Am. Compl.*, ECF No. 16.   In so doing, Robertson removed the direct substantive challenge alleging that the ALJ decision was not supported by substantial evidence.   After Defendant filed a motion to dismiss the First Amended Complaint, which was fully briefed by the parties, Plaintiff

was allowed to file a Second Amended Complaint.   *See Pl.'s Second Am. Compl.*, ECF No. 32. This complaint removed the class action allegations, removed jurisdictional bases not under § 405(g), and altered the request for relief to seek the reinstatement of the favorable ALJ decision from 2010 as SSA's final decision.   Defendant filed the instant Motion to Dismiss to challenge the procedural claims for failure to state a claim under Federal Rule 12(b)(6).   *Def.'s Mot. to Dismiss*, ECF No. 36.

## II.   Legal Standard

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief."   Fed. R. Civ. P. 8(a)(2).   To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).   This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 555 (internal quotations and citations omitted).   A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).   Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level …."   *Twombly*, 550 U.S. at 555 (citations omitted).   If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."   *Id.* at 558 (internal

quotations and citations omitted).   Finally, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

## III.    Discussion

Defendant asserts that Plaintiff's allegations must be dismissed for failure to state a claim because the SSA's redetermination process complies with the Constitution, the Act, and the APA.[3] Although Plaintiff requests that his benefits be reinstated in the prayer for relief, Plaintiff did not bring a separate claim challenging whether the ALJ's decision to terminate Plaintiff's benefits was based on substantial evidence.   Thus, Defendant argues that the Court can dismiss the entire case under the standards of Federal Rule 12(b)(6).

In reviewing these claims, the Court cannot deny the unfairness of the circumstances surrounding Plaintiff's case and other claimants similarly situated.   The SSA has yet to find any of the affected claimants at fault for their originally awarded disability benefits.   The actions allegedly taken by a select few have, in turn, caused calamity for many.   The Court is aware of

---

[3] The Court also notes that challenges to the SSA's redetermination procedures have mainly occurred in the Eastern District of Kentucky, as most of the claimants undergoing the redetermination process reside in that district.   The district judges in that district are in disagreement.   Two judges, Judge Danny C. Reeves and Judge Joseph M. Hood, determined that the redetermination process was constitutional and followed the statutory mandate.   *See Carter v. Colvin*, Civ. No. 0:16-017-DCR, 2016 WL 6794790 (E.D. Ky. Nov. 15, 2016) (Reeves, J.); *Perkins v. Colvin*, Civ. No. 16-cv-35, 2016 WL 7332989 (E.D. Ky. Dec. 16, 2016) (adopting Judge Reeves's analysis) (Hood, J.).   Judge Amul R. Thapar held differently, determining that the process violated the claimants' constitutional due process rights.   *Hicks v. Colvin*, Civ. No. 16-154-ART, 2016 WL 5944715 (E.D. Ky. Oct. 12, 2016) (Thapar, J.).   Although the Court is not bound by its sister courts in the Sixth Circuit, the Court has found the extensive analysis undertaken by these courts informative.   Plaintiff's challenges to the redetermination process do not have the benefit of extensive case law and legal precedent, so these differing district court opinions provide further argument and analysis for the Court to consider.

the hardships that Plaintiff and other claimants have suffered in just trying to survive without the main, or only, source of income provided for years by the SSA. The Court is sympathetic to these hardships, but the Court's decision must be confined within the law and legal precedent. A court's task is to interpret the law and not rewrite or misconstrue it to avoid injustice. Congress created the redetermination process, and the Act's inefficiencies, thus, are Congress's to solve. In view of that, the Court analyzes each of Plaintiff's causes of action in order.

### a. Due Process under Fifth Amendment

In Count I, Plaintiff alleges two separate violations of the Due Process Clause in the Constitution. The first violation asserts that Defendant failed to provide Plaintiff a meaningful hearing in front of a neutral decision maker before terminating Plaintiff's disability benefits. *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 49. Plaintiff argues that a meaningful hearing must include an opportunity to confront and rebut the predicate finding of fraud that triggered the redetermination process. *Id.* The second violation alleges that Defendant failed to redetermine Plaintiff's benefits immediately as the Act requires. *Id.* at ¶ 50. Plaintiff asserts that Defendant knew of the fraudulent conduct by Conn, ALJ Daugherty, and the doctors when the investigation began in 2007, and Defendant violated the immediacy requirement in the Act by waiting until 2015 to redetermine claimants' benefits. *Id.*

Defendant challenges these due process allegations, claiming that Plaintiff had a meaningful hearing when a neutral ALJ weighed all the admissible evidence and considered Plaintiff's arguments as to why the evidence showed disability before issuing a decision terminating Plaintiff's benefits. *Def.'s Mem. in Supp.*, ECF No. 37, at 6-7. According to Defendant, Plaintiff does not need to challenge the OIG's determination that there was reason to believe fraud existed to have a meaningful hearing because that finding only triggered the

redetermination process.   *Id.* at 8.   Plaintiff, however, could challenge the actual finding that directly led to his benefits' termination—the finding of insufficient evidence.   *Id.*   Defendant argues that this level of due process follows constitutional requirements.   *Id.*   Two district courts agreed with this analysis, balancing the factors in *Mathews v. Eldridge* and concluding that due process does not require an evidentiary hearing on fraud.   *Id.* at 9-10 (citing *Carter*, 2016 WL 6794790; *Perkins*, 2016 WL 7332989).   Plaintiff argues that a third district court judge, Judge Amul R. Thapar, correctly ruled on the due process issue, holding that the redetermination process prevented meaningful review by prohibiting claimants from objecting to the fraud assertion.   *Pl.'s Resp.*, ECF No. 38, at 9-10 (citing *Hicks*, 2016 WL 5944715).   Like Judge Thapar, Plaintiff asserts that Defendant cannot balance away due process rights with other administrative concerns when the current system fails to meet minimal standards.   *Id.* at 10-12.

Addressing the immediacy challenge, Defendant argues that the SSA acted in a timely manner after the OIG referral, but even if the SSA acted slower than mandated, the Act is silent as to the effect of the delay.   *Def.'s Mem. in Supp.*, ECF No. 37, at 12-13.   Nothing in the Act bars redetermination if the SSA fails to act immediately, so Defendant argues that the SSA could not violate Plaintiff's due process rights in this manner.   *Id.*   Plaintiff's Response does not challenge Defendant's arguments regarding the immediacy allegations within the complaint.   *See Hayes v. D.C.*, 923 F. Supp. 2d 44, 49 (D.D.C. 2013) (finding that a court can consider an argument conceded if not addressed in dispositive motion response).

Although Plaintiff could not challenge the determination of possible fraud in the original disability application, the redetermination hearing satisfies constitutional due process by allowing Plaintiff to object to the factual determination that directly formed the ALJ's decision to terminate benefits.   The final decision that Plaintiff did not qualify for disability benefits did not turn on the

fraud determination; the decision turned on the sufficiency of evidence.   The OIG's referral based on the reason to believe fraud existed triggered the redetermination process, and Plaintiff was given the full opportunity, with assistance from the SSA, to develop new evidence to prove his disability. The SSA also acted swiftly after receiving the OIG referral, and the Act does not offer any remedy, much less a bar from action, for any delay that did occur.   Therefore, the Court finds that the redetermination process provided Plaintiff a timely and meaningful hearing that fully complied with the Due Process Clause of the Constitution.

### i. Requirements of Due Process

The Fifth Amendment states that "[n]o person shall be … deprived of life, liberty, or property, without due process of law."   U.S. Const. amend. V.   Due process requires that the citizen be afforded an "opportunity to be heard."   *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).   This hearing must be conducted "at a meaningful time and in a meaningful manner" to conform to the constitutional requirements of due process.   *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Due process is not, however, a strict construction, and courts look to the particular circumstances involved to determine whether due process is violated.   *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands").   The "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."   *Kelly*, 397 U.S. at 263 (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)).   Courts generally look to three factors laid out in *Mathews v. Eldridge* to determine whether procedural due process has been constitutionally provided.   424

U.S. 319 (1976).   These three factors include:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* at 335.   The Court will unravel Plaintiff's due process concerns through the *Eldridge* factors

in turn.[4]

### 1.   Private Interest

The Supreme Court has consistently recognized that a person has a private interest in

maintaining means of livelihood.   *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543

(1985) (citing cases).   The plaintiff in *Eldridge* challenged the termination of his disability

benefits on due process grounds.   *Eldridge*, 424 U.S. at 323.   In analyzing the procedural due

process issue, the Supreme Court stated "that the interest of an individual in continued receipt of

these benefits is a statutorily created property interest protected by the Fifth Amendment."   *Id.* at

332 (internal quotation marks omitted).   Here, the parties do not disagree that Plaintiff has a

private interest in maintaining his disability benefits without interruption.   Plaintiff depends on

his disability benefits to provide income for his family, and the deprivation of these benefits

directly impacts his interests.   Therefore, the Court finds that Plaintiff easily satisfies the first

factor by demonstrating that the SSA's actions affect Plaintiff's private interest.

### 2.   Erroneous Deprivation and Additional Safeguards

---

[4] Judge Thapar waited until the end of his analysis before weighing the *Eldridge* factors, stating that "[w]hen the naked eye can see that process falls short of the mark, courts need no measuring tape."   *Hicks*, 2016 WL 5944715, at *11.   However, the bulk of his analysis relates to what constitutes a meaningful hearing based on whether the claimant could challenge the predicate fault determination that triggered the redetermination process.   This Court stays within the framework provided in *Eldridge* and analyzes the same concerns within the second factor.

The *Eldridge* Court focused on two facets of the second factor, analyzing the potential deprivation under the then current termination framework and how additional protections could reduce the risk of erroneous deprivations. *Id.* at 343-46. Terminating Plaintiff's disability benefits after redetermination certainly would deprive Plaintiff of some, if not all, financial security.[5] However, if the SSA improperly awarded Plaintiff disability benefits in the first place, the termination protects the public fisc and removes only the benefit Plaintiff was never meant to have. The balance, therefore, is having enough procedural safeguards in place to prevent the erroneous deprivation of benefits while remaining vigilant in providing benefits only to those claimants considered disabled.

The current redetermination process focuses on analyzing whether a claimant's file justifies awarding benefits after alleged fraudulent evidence is removed.[6] The redetermination hearing allows the SSA to examine all of the original evidence, minus the excluded report from Dr. Herr or the other three doctors, and any additional evidence that a claimant submits to prove disability at the time of the original award. The purpose of providing disability benefits is improved by having an impartial ALJ conduct a new hearing on the evidence. In Plaintiff's case, because the Appeals Council could not affirm the previous favorable decision with the remaining medical evidence, Plaintiff's claim was sent to a new ALJ for redetermination. This ALJ held a redetermination hearing in which Plaintiff could be present, have counsel, introduce more

---

[5] The Court notes, however, that the deprivation of disability benefits does not rise to the level of deprivation of welfare benefits. *See Eldridge*, 424 U.S. at 342 ("[T]he hardship imposed upon the erroneously terminated disability recipient may be significant. Still, the disabled worker's need is likely to be less than that of a welfare recipient."). Although both deprivations are significant, the disabled worker has other options for temporary income—including other programs of public assistance—because disability benefits under Title II are not based on financial resources.

[6] Judge Reeves analyzed the current redetermination process and the risk of erroneous deprivation of benefits thoroughly in *Carter*, 2016 WL 6794790, at *9-10.

evidence, and argue that the SSA properly awarded benefits.

This process inevitably burdens Plaintiff by forcing him to re-prove that he deserves disability benefits without the disregarded report.   Doctors from Plaintiff's past may have destroyed medical records before Plaintiff needed the information to supplement his file.   Perhaps Plaintiff did not see any other medical professionals because Dr. Herr's consultative report was enough to convince the previous ALJ that Plaintiff deserved disability benefits.   These difficulties appear unfair, but the SSA has taken steps to assist claimants through the redetermination process.[7] The current process accepts new medical records and other evidence as long as they reflect back to the original disability.   The SSA offers to help claimants obtain this new medical evidence to satisfy the evidentiary requirements.

As Judge Reeves highlights, the greatest risk of erroneous deprivation comes not from the redetermination process itself, but from the exclusion of the suspect medical evidence submitted by the four doctors.   *Carter*, 2016 WL 6794790, at \*9.   The level of this risk, however, depends on the disregarded evidence's probative value.   During the redetermination process—like a typical disability determination—the ALJ must weigh the evidence within the file.   An ALJ will apply greater weight to a treating physician's report than a non-treating physician's report.   *See id.* (citing testimony by SSA at court hearing).   In this case, Dr. Herr was not Plaintiff's treating physician; rather, Dr. Herr provided a "consultative report" in support of Plaintiff's disability. *Pl.'s Resp.*, ECF No. 38, at 4.   Moreover, the criminal indictment of ALJ Daugherty, Conn, and Dr. Adkins alleges that they engaged in a conspiracy to defraud the SSA by having ALJ Daugherty

---

[7] The Court additionally credits the SSA for narrowing the number of claimants affected by redeterminations.   As previously noted, the SSA excluded evidence suspected of fraud in a narrow set of cases—those cases with consultative reports from four specific doctors, when the doctors were retained by Conn, and if submitted during a specific time frame covering the conspiracy.

-13-

summarily issue fully favorable decisions based on suspected false medical evaluation reports.[8] Although the criminal indictment does not name Dr. Herr, the indictment does explain that others were involved in the conspiracy.   This criminal scheme, as a whole, shows that ALJ Daugherty's misconduct discredits the determination of disability in the first place.   The alleged fraud did not just allow a suspect consultative report to be admitted as evidence; ALJ Daugherty allegedly accepted the medical forms *at face value* in order to issue favorable decisions.   *See Carter*, 2016 WL 6794790, at *9.   An ALJ properly weighing the excluded evidence would have afforded it little, rather than controlling, weight, making the probative value of the disregarded evidence marginal.[9]   The current safeguards and ability to present new evidence before the ALJ in redetermination make the general risk of erroneous deprivation fairly low.

However, Plaintiff argues that additional safeguards would lower the risk of erroneous deprivation even more.   Plaintiff's challenges regarding the lack of opportunity to object to the initial OIG referral and finding of potential fraud belong in the analysis of *Eldridge*'s second factor. Plaintiff asserts that to have a meaningful hearing, Plaintiff must have full access to all the evidence the SSA used in determining that Plaintiff did not qualify for disability benefits—including the evidence supporting the OIG referral on fraud.   If the OIG mistakenly included Plaintiff's file in

---

[8] *See Retired Judge, Attorney and Psychologist Indicted in $600 Million Social Security Fraud Scheme*, Dep't of Justice (Apr. 5, 2016), https://www.justice.gov/opa/pr/retired-judge-attorney-and-psychologist-indicted-600-million-social-security-fraud-scheme.

[9] Plaintiff highlights Judge Thapar's dismissal of this argument as stated in an opinion denying reconsideration of *Hicks*.   *Pl.'s Resp.*, ECF No. 38, at 10-11.   Judge Thapar argues that the disregarded evidence in that plaintiff's case must have been important because it had turned her previous denials for benefits into her first favorable decision.   *Hicks v. Colvin*, Civ. No. 16-154-ART, 2016 WL 7436050, at *3 (E.D. Ky. Dec. 21, 2016).   When the SSA continued to review whether the plaintiff was still eligible for benefits, it continued to reaffirm her benefits with the inclusion of the disregarded evidence.   *Id.*   Judge Thapar does not, however, discuss ALJ Daugherty's improper weighing of the evidence, which this Court finds persuasive to justify a different result.

the fraudulent pile, then Plaintiff's benefits may have been wrongly terminated because the ALJ could not review Dr. Herr's report.   So the question left for this Court is whether the SSA needs to provide an additional safeguard by allowing Plaintiff to challenge the "reason to believe fraud" was involved.

As the *Kelly* Court unequivocally states, "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."   *Kelly*, 297 U.S. at 270.   By allowing a benefit recipient "full access to all information relied upon by the … agency", the recipient is further protected from the agency mistakenly terminating benefits.   *Eldridge*, 424 U.S. at 345-46.   Additionally, the neutral decision maker must base the finding of benefit eligibility "solely on the legal rules and evidence adduced at the hearing."   *Kelly*, 297 U.S. at 270.

Here, the ALJ based the finding, that Plaintiff's file contained insufficient evidence to support disability benefits, on the arguments at the hearing and the remaining medical evidence. Granted, this medical file no longer included the information provided by Dr. Herr.   However, Plaintiff could present additional medical and other evidence to argue that he was properly awarded disability benefits in 2010.   *See Eldridge*, 424 U.S. at 346 (finding ability to admit new evidence and challenge information within file enough to "enable the recipient to 'mold' his argument to respond to the precise issues which the decisionmaker regards as crucial").   The SSA did not provide Plaintiff with evidence of Dr. Herr's fraudulent conduct because the ALJ did not rely on any of that information when making the redetermination.   Rather, the ALJ considered only the medical file, which amounted to over 300 pages of medical information and records.   *Def.'s Mem. in Supp.*, ECF No. 37, at 7 n.3.   The decision to terminate Plaintiff's benefits did not rely on a

governmental factual finding that Plaintiff's claim involved fraud; the decision was based on the insufficiency of the evidence as a whole.[10]   Under the directives in both *Kelly* and *Eldridge*, the SSA has provided Plaintiff the full opportunity to challenge the evidence used by the government and the information relied upon by the ALJ when terminating Plaintiff's benefits.   Additionally, the ALJ limited his redetermination finding to the medical evidence in the record presented at the hearing.

Further, Plaintiff argues that the fraud finding triggering redetermination should be regarded as a "fundamental issue of fact" that Plaintiff can challenge.   *Pl.'s Resp.*, ECF No. 38, at 8.   Pointing to government findings of fact that directly impacted a plaintiff's interest in past cases, Plaintiff argues that allowing the fraud finding to go unchallenged prevents due process. *Id.* at 9 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Interstate Commerce Comm'n v. Louisville & N.R. Co.*, 227 U.S. 88 (1913)).   These cases involve government decisions that were not based on supporting evidence and directly informed the government's subsequent actions. *See Hamdi*, 542 U.S. at 509 (allowing citizen to challenge designation as enemy combatant when the designation directly determined detention); *Interstate Commerce*, 227 U.S. at 90 (challenging the Commission's enforced rates as arbitrarily decided).   The Court disagrees that these cases apply with the same effect here.

First, the SSA did not make a factual finding that fraud existed within Plaintiff's file.   The statutory scheme provides that the OIG refers files for redetermination to the SSA when there is reason to believe that fraud was involved.   The SSA then starts the redetermination process, in

---

[10] Judge Hood provides an interesting analysis on Congressional authority to control what types of evidence can be considered in evaluating a disability claim.  *See Perkins*, 2016 WL 7332989, at *3 ("legislation to exclude facts from evidence or … to decide what evidence … may be considered is hardly shocking").   Plaintiff does not challenge the Congressional authority to limit the evidentiary record here.

which all flagged evidence must be disregarded, to make a factual finding on whether a claimant deserved the disability benefits. This factual finding—the sufficiency of evidence—directly controlled whether the SSA terminated Plaintiff's benefits. Due process requires an agency to provide a claimant with meaningful opportunity to attack the facts relied upon by the agency when acting to injure that claimant. The Act here provides the redetermination process in which Plaintiff can offer new evidence and challenge the factual finding of insufficiency of evidence before the ALJ, the Appeals Council, and eventually the federal courts. The OIG's referral for reason to believe fraud existed is not an evidentiary fact to be challenged, but merely a triggering mechanism that initiates the redetermination process. Second, this case differs from the circumstances present in *Hamdi* and *Interstate Commerce* because the government actions in those cases were the direct result of unchallenged factual findings. Here, the SSA's termination of Plaintiff's benefits did not occur because of the OIG's referral regarding suspected fraud. The SSA terminated Plaintiff's benefits because he did not have sufficient evidence to justify having received benefits in the first place.[11]  *See Carter*, 2016 WL 6794790, at *8 n.11 ("While the finding of fraud is a predicate fact without which their termination of benefits would not have occurred as it did, … it is not the proximate cause of the termination."); *Perkins*, 2016 WL 7332989, at *3 ("[T]he decision to revoke Perkins's benefits did not hinge on the fraud allegation. Rather, the revocation was premised on the lack of sufficient evidence to support the initial benefits award.").

---

[11] The Court has read and analyzed Judge Thapar's extensive analysis on this issue that comes to the opposite conclusion. Judge Thapar concluded that the SSA "decided a material fact without any adversarial input" which violated the plaintiff's due process rights to challenge facts relied upon by the government. *Hicks*, 2016 WL 5944715, at *7. The Court finds Judge Thapar's analysis thorough and thoughtful, but disagrees with the characterization that the SSA made a finding of fact on the issue of fraud. Reason to believe fraud was involved merely triggered the process.

Moreover, even if the Court required an evidentiary hearing on whether Dr. Herr's report was fraudulent to justify its exclusion, it would not significantly reduce the risk of erroneous deprivation.   If Plaintiff could challenge the OIG's referral on fraud, the SSA would have to conduct an evidentiary hearing before initiating the redetermination process.   The SSA would have to prove by a preponderance of the evidence that fraud existed in order to trigger the redetermination process.   With a criminal indictment of three of the main players in a fraud conspiracy and an investigation including Dr. Herr in that conspiracy, it seems unlikely that the SSA would fail in meeting its burden.   While Plaintiff may be able to call Dr. Herr as a witness to testify as to the legitimacy of his medical report, Dr.'s Herr's credibility would be challenged and recollection doubtful.   Thus, the Court agrees with Judge Reeves's analysis that an initial evidentiary hearing on fraud would add negligible value in preventing erroneous deprivation.   *See Carter*, 2016 WL 6794790, at *10.   Under the circumstances of this case, with Plaintiff's excluded medical evidence from only a consulting physician, the Court finds that the added evidentiary hearing of fraud would add little to no value in preventing the erroneous deprivation of Plaintiff's benefits.

Therefore, the Court finds that Plaintiff's inability to challenge the exclusion of Dr. Herr's report does not amount to a serious risk of erroneous deprivation.

### 3.   Fiscal and Administrative Burdens with Added Protections

The third factor in the *Eldridge* analysis balances the added fiscal and administrative burdens the government would experience with the value of additional safeguards.   In the motion to dismiss, Defendant argues that evidentiary hearings would increase costs, result in greater overpayments, jeopardize ongoing criminal prosecutions, create disparate results among claimants, and interfere with the SSA's interests in quick redeterminations.   *Def.'s Mem. in Supp.*,

-18-

ECF No. 37, at 11.   Plaintiff challenges the SSA's notion of cost and differing results in his Response.   *Pl.'s Resp.*, ECF No. 38, at 11-12.   The Court is not persuaded that differing possible outcomes should balance the scale one way or the other, but the SSA's other arguments remain convincing.

Having hearings on the overall conspiracy would be an enormous task for the SSA and likely lead to the challenged consulting report being sufficiently tainted to warrant exclusion.   The nature of the alleged fraudulent conspiracy would require lengthy hearings and substantial preparation.   This delay would require the SSA to continue to issue benefits longer than if allowed to redetermine cases immediately.   Thus, a delay and separate or extended hearings would add to the overall cost.   If the Court found probable value in the evidentiary hearing, these costs may be outweighed by the due process afforded to claimants.   As discussed above, however, the Court found the hearings on fraud to add only negligible value, so the costs are an unnecessary additive.

Moreover, the criminal prosecutions of Conn, ALJ Daugherty, and Dr. Adkins are ongoing as none of the defendants have yet faced trial.   To force the SSA to conduct evidentiary mini-trials on the fraudulent allegations could interfere with the investigation and preparation of the trials of the defendants in the criminal case.

The greatest detriment to the SSA in requiring these evidentiary hearings would be the time and delay involved.   The Act identifies Congressional intent to have these redeterminations occur "immediately" after the belief on fraud is formed.   As the system currently runs, the SSA can timely redetermine benefits when flagged by the OIG.   The claimants receive meaningful hearings, but the SSA protects the public fisc by terminating benefits swiftly when determined that disability benefits were wrongly awarded.   Judge Reeves notes that 46 percent of the redeterminations have resulted in favorable outcomes for claimants.   *Carter*, 2016 WL 6794790,

at *11 n.14 (citing testimony by SSA at court hearing).   Clearly the triggering mechanism based on fraud does not equate to automatic termination of claimants' benefits.

Ultimately, the Court finds that the third factor weighs in favor of the SSA.   The negligible value of having an evidentiary hearing on the OIG's belief of fraud is outweighed by the delay, the costs, and the potential interference with criminal prosecutions.

Balancing the three *Eldridge* factors, the Court finds that the SSA provided Plaintiff due process as constitutionally required.   Plaintiff has a private interest in the disability benefits, but the current safeguards of the redetermination process provide Plaintiff full due process. Additional procedures for an evidentiary hearing on the suspected fraud would add only negligible value and cause higher costs and unnecessary delays for the SSA.   Congress instituted a system in which the OIG's finding of fraudulent activity results in a quicker process to redetermine benefits.   The redetermination process clearly strikes a balance between quick redeterminations to protect the public fisc and providing meaningful hearings to prevent erroneous deprivation of benefits.   Looking at the entirety of the redetermination process from the triggering mechanism to the final ALJ decision, the Court is satisfied that Plaintiff received a meaningful hearing at a meaningful time and could fully present evidence of original disability.   The fact that Plaintiff could not challenge the triggering determination of fraud does not violate his due process rights as the SSA never relied on a factual finding of fraud in its decisions.   Accordingly, the Court finds that Plaintiff cannot maintain a cause of action under the Due Process Clause for the inability to challenge the OIG referral.

### ii.  Immediacy Requirement within Act

The Act requires the SSA to "immediately redetermine" claimants' cases after receiving OIG referral for reason to believe fraud or similar fault was involved in the original award.   *See*

-20-

42 U.S.C. § 405(u)(1)(A).   The statute does not contain language regarding consequences to the SSA if the agency fails to act with immediacy.   The fact that the SSA can reopen a disability determination at any time for fraud or similar fault supports the idea that the immediacy requirement was created to protect the public fisc rather than provide a claimant with a speedy redetermination.   *See* 20 C.F.R. § 404.988(c) (allowing reopening for claims obtained by fraud at any time).

In this case, Plaintiff received notice of the redetermination process within one week of the OIG referral.   According to the Act, the SSA must begin the redetermination process once the referral is made.   The fact that an investigation involving the same individuals began years prior does not necessitate the SSA's immediate reaction—only the referral does.[12]   Although the OIG referral made reference to a previous document sent to the SSA explaining the investigation, there is no evidence that the prior letter was a referral under the Act.   Plaintiff did not present further arguments in his Response as to why the SSA's timing violated his due process rights.

The Court, thus, finds that the SSA acted in the manner required under the Act by issuing notices to claimants after receiving a direct referral from the OIG.   Although both parties would have benefitted from a more expeditious process, the statute is silent as to the effect of a redetermination process not immediately taken.   The delay likely made it more difficult for Plaintiff to acquire new medical evidence to prove his disability, but the Act does not provide a remedy for such delay.   Thus, even if the SSA could have acted sooner when the investigation began, the Court will not penalize the SSA by barring the redetermination process when such penalty is not provided for within the Act.   Moreover, the wording in the Act suggests that the

---

[12] Judge Reeves explains why the years building up to the referral is partially justified by internal cover up and misconduct within the SSA.   *Carter*, 2016 WL 6794790, at *14.

immediacy requirement worked to protect the public fisc rather than individual claimants. Accordingly, the Court finds that this delay does not amount to a due process violation.   Plaintiff's claims alleging violations of due process under the Fifth Amendment are hereby **DISMISSED**.

### a.   Alleged Act Violations

In Count II, Plaintiff alleges that the redetermination process in 42 U.S.C. § 405(u) runs counter to the Act's requirements regarding procedural protections and reopening regulations. Specifically, Plaintiff alleges that the Act provides the right to have all relevant issues decided in a new proceeding and the right for Plaintiff to access evidence relied upon during the decision-making process.   *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 52.   Plaintiff argues that he deserved an opportunity to challenge whether fraud justified the exclusion of evidence.   *Pl.'s Resp.*, ECF No. 38, at 13.   The reopening procedures, of which Plaintiff argues redeterminations are a subset, provide for these kind of procedural protections.   *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 53. In his Response, Plaintiff unwinds the legislative history surrounding the development of the redetermination process, stressing that Congress intended to include the same protections from the reopening procedures.   *Pl.'s Resp.*, ECF No. 38, at 18-21.   Plaintiff also claims that *res judicata* bars redetermining a final ALJ decision without new evidence.   *Id.* at 22-25.

Defendant argues that the regulations Plaintiff cites as controlling do not apply to the redetermination process.   Defendant asserts that § 405(b) of the Act applies only to final decisions of the Commissioner and does not extend to the OIG determination of reason to believe fraud was involved.   *Def.'s Mem. in Supp.*, ECF No. 37, at 14.   According to Defendant, Congress created the redetermination process outside the rules and requirements of § 405(b).   *Id.*   Defendant also highlights Congressional debate to show the intentional separation of the redetermination process from reopening procedures.   *Id.* at 15.   Defendant argues that this recognized difference supports

its argument that the SSA followed its statutory mandate.   *Id.*   If the Court does not agree that the mandate is clear, Defendant requests the Court to defer to the SSA and accept its interpretation of the Act as reasonable.   *Id.* at 16.   Regarding Plaintiff's *res judicata* argument, Defendant reasons that the statutory requirement to redetermine claims supersedes the common law principle and that the changed circumstances of alleged fraud justify reconsidering Plaintiff's medical record. *Def.'s Reply*, ECF No. 39, at 10.   Accordingly, Defendant argues that Plaintiff's claims cannot support a cause of action.

### a.   Redeterminations under the Act

Deciding whether the redetermination process falls under the procedural protections within § 405(b) requires the Court to engage in an analysis of statutory construction.   Section 405(b) states that "[a]ny … decision *by the Commissioner* of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain" various procedural protections, including the right to a hearing on the evidence relied upon.   42 U.S.C. § 405(b) (emphasis added).   Even though the SSA argues that redeterminations exist outside these requirements, the redetermination process, as currently run, seemingly provides these protections by having the claimant attend a hearing in front of a neutral ALJ who redetermines the claimant's benefits.[13]   The ALJ's final decision, attributed to the Commissioner, can be challenged and appealed to the Appeals Council and then to federal district court.   Plaintiff challenges only one piece of this process: the fact that Plaintiff does not have the opportunity to challenge the OIG's determination of fraud that triggered the redetermination process and required the exclusion of Dr. Herr's report.   *See Pl.'s Resp.*, ECF No. 38, at 13 ("The hearing must address

---

[13]   The Court recognizes that such hearing is not mandated by the specific section regarding redeterminations.   *See* 42 U.S.C. § 405(u).

-23-

all material issues that pertain to the redetermination, and that would include the issue of whether there is fraud that justifies exclusion of material evidence.").

"Statutory construction … is a holistic endeavor.   A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).   To begin, a court must look to the plain language of the challenged statute.   "[I]f a statute is unambiguous regarding the question presented, the statute's plain meaning controls." *Morgan v. Sebelius*, 694 F.3d 535, 537 (4th Cir. 2012) (citing deference rules established in *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).   Therefore, the analysis must turn to the text and structure of the statute itself.   *Id.*   "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

The Court reads § 405(b) as a clear directive that redeterminations do not require a separate hearing on the OIG's referral regarding fraudulent evidence.   Plaintiff first argues that redeterminations fall within the "determinations of disability" that require a hearing under § 405(b).   *Pl.'s Resp.*, ECF No. 38, at 14.   This argument largely follows the same concerns addressed in the due process section.   Reading the statute's plain language, the Court finds that the SSA has complied with the Act's requirements.   The redeterminations, as currently structured, provide hearings with the opportunity for new evidence, evidentiary challenges to the information remaining in the file, witnesses, and written decisions analyzing the evidence and arguments presented at the hearing.   Section 405(u) does not require such hearings explicitly, but as redetermination decisions are final disability decisions by the Commissioner, the SSA has properly provided claimants facing potential adverse decisions hearings on the evidence.

Plaintiff's main objection revolves around the inability to challenge the OIG determination on fraud.   However, § 405(b) provides procedural protections for any decision by the Commissioner, and the Commissioner has no decision-making authority in the OIG's determination of fraud.   The OIG's referral is a separate investigation that has no bearing on the final decision of the Commissioner—the referral only triggers the process and mandates the exclusion of tainted evidence.   *See* 42 U.S.C. § 1320a-8(l) (providing statutory authority for OIG to refer cases suspected of fraud to SSA).   As fully explained in the due process analysis, the Court finds that this triggering mechanism falls outside the SSA's actual redetermination decision on benefits.   The plain text of § 405(b) requires a hearing on decisions made by the Commissioner, and the Court will not extend this requirement to decisions made by the OIG outside of the SSA's authority.   Therefore, as the Act mandates hearings and procedural protections for decisions made only by the Commissioner and not the OIG, the SSA has not violated the Act with the redeterminations.

Plaintiff next argues that redeterminations need to follow reopening procedures that require a finding of fraud before revising benefits, but the Court finds that redeterminations exist separately from the reopening procedures.   Reopenings require *the SSA* to make a finding of fraud or similar fault before reopening and revising a claimant's benefits.   *See* 20 C.F.R. § 404.998. Therefore, following the directives in § 405(b), a claimant would be able to challenge the SSA's determination of fraud as part of the Commissioner's final decision. [14]   Redeterminations

---

[14] Likewise, when the SSA investigates and establishes fraud or similar fault in a claimant's file to trigger the redetermination process, the claimant is afforded an opportunity to challenge the exclusion of the tainted evidence.   *See* HALLEX I-1-3-25(C)(4)(a) ("However when the redetermination is based solely on an SSA finding of fraud or similar fault, an adjudicator can consider a beneficiary's or recipient's objection to the disregarding of certain evidence."). This follows § 405(b)'s requirement that a claimant can challenge the decisions of the Commissioner.

stemming from OIG investigations, on the other hand, provide for an independent determination of fraud that occurs separate from the SSA.   The OIG referral is based on reason to believe that fraud existed, but that determination does not come from the Commissioner and does not affect the Commissioner's final decision to award or terminate a claimant's benefits on redetermination.[15]   Therefore, the SSA's interpretation that reopenings exist separately from redeterminations follows the different structure provided in the Act itself.   Moreover, when Congress uses different language to describe a new process, the Court will consider that differentiation important and deliberate.   *See Bd. of Educ. of Westside Cmty. Sch. v. Mergens by & through Mergens*, 496 U.S. 226, 242 (1990) ("Congress' deliberate choice to use a different term … can only mean that it intended to establish a standard different from the one [previously] established.").

Even if the Court found the language of §§ 405(b) and 405(u) to be ambiguous, the SSA is entitled to at least some deference in how the agency construes the statute.   The SSA's interpretation that a claimant cannot challenge the OIG referral is found in HALLEX I-1-3-25(C)(4) and Social Security Ruling (SSR) 16-1p.   *See* HALLEX I-1-3-25(C)(4) ("Under sections 205(u) and 1631(e)(7) of the Act [later codified as 42 U.S.C. § 405(u) and 1383(e)(7),] adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral"); SSR 16-1p, 2016 WL 931538 (March 14, 2016) ("we will not administratively review information provided by SSA's Office of the Inspector General under section 1129(l) [later codified as 42 U.S.C. 1320a-8(l)] of the Act regarding its reason to believe that fraud was involved in the individual's application for benefits.").   SSR 16-

---

[15] The Court has analyzed the difference between the determination of fraud and the evidence used in redetermination extensively in the due process section.   The Court finds no need to repeat the discussion here.

1p further states that "[f]raud and similar fault redeterminations under sections 205(u) and 1631(e)(7) of the Act are distinct from reopenings as described in 20 CFR 404.987-404.996."  *See* SSR 16-1p n.1.  These rulings do not have the force of law, but the SSA is bound by the components stated within.  *See generally id.*; *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).  The Fourth Circuit has afforded the regulations within the SSR deference "unless they are clearly erroneous or inconsistent with the law."  *Pass*, 64 F.3d at 1204 n.3; *see also Kennedy v. Shalala*, 995 F.2d 28, 30 n.3 (4th Cir. 1993) (citing *Wagner Seed Co. v. Bush*, 946 F.2d 918, 922 (D.C. Cir. 1991) ("[I]t is simply not the law of this circuit that an interpretive regulation does not receive the *Chevron* deference accorded a legislative regulation.")).  This Court agrees that *Chevron* deference should apply to the SSR even if the HALLEX provisions would only be afforded some deference under *Skidmore*.  *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) ("we are persuaded that *Chevron* applies to social security rulings insofar as the rulings directly involve construction of the statute."); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (affording deference to agency's rulings, interpretations, and opinions under corresponding statute).  *Chevron* deference requires the Court to determine whether the SSA's interpretation as stated in the SSR is reasonable.

The SSA's interpretation that redeterminations exist separately from reopenings and that the OIG referral cannot be reviewed by the agency is reasonable.  Here, Congress created the redetermination process with full knowledge of the previously enacted reopening structure.  The fact that Congress gave the OIG authority to find fraud in claimants' cases and refer the case to the SSA shows differentiation from the reopening process.  It is reasonable in this case to interpret these procedures as purposely different and, thus, apply different procedural protections.  The Act does not provide an opportunity to object to the OIG's finding of fraud and instead maintains

separation between the OIG triggering mechanism that excludes the suspected evidence and the SSA redetermination decision.   The most convincing part of the Act supporting the SSA interpretation is that § 405(b) applies only to the decisions of the Commissioner.   As the Commissioner had no involvement in the OIG's referral for belief of fraud, the SSA's interpretation that Plaintiff does not have the right to challenge that determination under § 405(b) is reasonable.   Further, the redetermination process in § 405(u) does not contain specific hearing requirements, so it is reasonable for the SSA to apply procedural protections afforded under § 405(b) only for the actual decisions of the Commissioner.   The Court cannot state that the SSA's interpretation, that the redetermination process exists as a separate procedure from reopenings and as separate from the hearing requirements in § 405(b), is unreasonable based on the statutory construction.   Plaintiff may desire a different result, but a federal court should defer to the agency if the interpretation is reasonable.   *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("*Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.").

Ultimately, the Court finds the redetermination statutory language unambiguous, so the Court need not delve into an extensive analysis of legislative history.   Plaintiff and Defendant both cite the Congressional discussions involved when creating the redetermination procedures. The fact that both parties can cite the same hearings and discussions to support their respective points demonstrates that legislative history can be molded to defend each argument.   Legislative history can include concerns from opposing viewpoints and mislead a court on what Congress intended to accomplish with a particular statute or amendment.[16]   A court's best understanding of

---

[16] In *Carter*, Judge Reeves stated that the plaintiff's description of the legislative history

the statute comes from the plain meaning of the words included in the final iteration of the legislation.   Therefore, the Court does not need to untangle the legislative history in this case because the statutory language is clear.   The procedural protections of § 405(b) apply only to final decisions by the Commissioner, and the OIG referral and determination of fraud is not a final decision by the Commissioner.   Plaintiff, thus, has no right under the Act to challenge the OIG's determination of fraud.   Accordingly, Congress must be the one to enact legislative change to the redetermination process.   This Court holds that the Act does not require the SSA to provide Plaintiff an opportunity to challenge the determination of fraud by the OIG because that determination is not a final decision by the Commissioner under § 405(b).   Thus, Plaintiff's claim for violation of the procedural protections in § 405(b) must fail.

### b.  Res Judicata

Plaintiff's next allegation that Defendant violated common law *res judicata* principles also fails to state a claim.   *Res judicata* is a common law concept that bars relitigation of the same claim in multiple forums.   The Fourth Circuit has held that 42 U.S.C. § 405(h) codifies *res judicata* and prevents final decisions by the SSA from being relitigated.   *See Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987); 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.   No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."); *but see Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 478 n.10 (4th Cir. 1999) (limiting *Lively* holding to substantial-evidence review rather than straightforward

---

referring to reopenings during redetermination discussion was "merely a play on words."   *Carter*, 2016 WL 6794790, at *13.   The court held that the legislative history instead demonstrated that Congress designed redeterminations separately from reopening procedures.   *Id.*

application of *res judicata*).   Applying *res judicata* to social security cases prevents the SSA "from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding."   *Id.*; *see also U.S. v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").   However, Congress can override common law principles of *res judicata* by crafting legislation with alternate procedures.   *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Thus, when a common-law principle is well established, … the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (internal quotation marks and citations omitted)); *Albright*, 174 F.3d at 478 n.10 (recognizing authority for SSA to reopen previous final decisions under certain circumstances).

The principles of *res judicata* prevent the SSA from revising decisions based off the same evidence absent an exception provided for in the Act.   However, the fact that the original decision maker in Plaintiff's case has been indicted for fraudulently awarding benefits means that *res judicata* likely does not prevent an impartial ALJ from reviewing Plaintiff's file.   Further, the redetermination process eliminates evidence believed to contain fraud, so the file no longer exists as it did in the original determination.   Claimants in redetermination can supplement the file with new medical and other evidence, and the ALJ looks at the file as a whole in redetermining benefits. Here, the ALJ in redetermination did not consider the same exact evidence because Dr. Herr's medical report was excluded from the file.   As the ALJ did not review the file as it previously

existed during the original determination, Plaintiff's *res judicata* concerns are largely unfounded.[17]

Moreover, § 405(h) limits reviewing final determinations by the SSA unless provided for specifically in the statute.   Courts have recognized that the SSA has the authority to revise decisions during a reopening procedure, which reconsiders original evidence.   *See Albright*, 174 F.3d at 478 n.10.   Section 405(u) directly authorizes the SSA to redetermine claimants' benefits after receiving an OIG referral.   Thus, the statutory scheme provides a mandate that overrides the *res judicata* principle.   Although Plaintiff argues that this statutory derogation of common law is not clearly stated, the Court finds Plaintiff's argument unpersuasive.   Congress's statutory purpose in creating a redetermination process once fraud is suspected is clear in the statute's language.   *See* 42 U.S.C. § 405(u) (requiring immediate redetermination after OIG referral). Congress would not have created a redetermination process that could be displaced by common law *res judicata* principles as it would make § 405(u) meaningless.   Section 405(h) provides for specific exceptions to reviewing final determinations, and the redetermination process is one of those exceptions.   Even if § 405(u) does not explicitly state that it acts as an exception under §

---

[17]   The Court also finds Plaintiff's cases in argument unpersuasive to the specific situation here.   In *Miranda v. Secretary of Health, Education and Welfare*, the First Circuit admonished the idea that the agency could "terminate an earlier finding of disability on no basis other than his reappraisal of the earlier evidence."   514 F.2d 996, 998 n.* (1st Cir. 1975).   However, the redetermination process is not simply a reappraisal of previous evidence but a redetermination without considering suspect fraudulent evidence.   The court also recognized that terminating benefits could be justified when a claimant's disability is not as serious as previously thought when looking at the cumulative medical record.   *Id.*   In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that the SSA could not "reexamine issues previously determined absent new and additional evidence."   126 F.3d 837, 842 (6th Cir. 1997).   The OIG's finding of fraud is not new evidence in this case, but the finding mandates the exclusion of evidence previously relied upon and affords claimants the opportunity to present new evidence.   This difference makes the new ALJ redetermination different than merely revising an ALJ decision based on the same information.   Plaintiff further argues that these cases allow revising final decisions only when "changed circumstances" occur.   *Pl.'s Resp.*, ECF No. 38, at 24.   The OIG's finding of fraud clearly involves changed circumstances to justify redetermination.

405(h)'s finality rule, it is clear from reading the statute as a whole that the exception is necessary for redeterminations to proceed.   Plaintiff's continued reliance on the reopening procedures and requirements are unjustified because reopenings and redeterminations, although containing similar purposes, have different procedures.   *See Pl.'s Resp.*, ECF No. 38, at 25.   Therefore, the Court finds that the redetermination process fits within the statutory scheme that protects *res judicata* concerns while also allowing for revisions when the SSA discovers changed circumstances. Accordingly, Plaintiff cannot maintain a cause of action for violation of the Act under *res judicata* principles.   Plaintiff's allegations of violating the Social Security Act in Count II are hereby **DISMISSED**.

### b.  Alleged APA Violations

In Count III, Plaintiff alleges that the redetermination process violates the statutory requirements set out in the APA.   Plaintiff characterizes the redetermination proceeding as a formal adjudication, which enforces procedural protections for the claimant.   *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶¶ 55-56.   By not permitting Plaintiff to cross-examine and challenge the fraud determination, Plaintiff alleges that Defendant violated the procedural protections in the APA.   *Id.* at ¶ 57.   Plaintiff also asserts that the ALJ relied on evidence outside the record or the proceeding when terminating Plaintiff's benefits, which runs afoul of 5 U.S.C. § 556(e).   *Id.* at ¶ 58.   The APA further requires that an investigative employee of the agency cannot participate or advise an agency decision.   5 U.S.C. § 554(d).   Plaintiff alleges that Defendant violated this provision by accepting the OIG's factual finding of fraud that led to the redetermination process. *Pl.'s Second Am. Compl.*, ECF No. 32, at ¶ 59.   By failing to follow these regulations, Plaintiff alleges that Defendant's actions are arbitrary and capricious.   *Id.* at ¶ 61.

Defendant again argues that Plaintiff has misapplied the redetermination procedure to the

APA regulations on formal adjudications.   Defendant asserts that the Act does not require redeterminations to have a formal hearing on the record, making the APA's requirements inapplicable.   *Def.'s Mem. in Supp.*, ECF No. 37, at 16.   Defendant also challenges the allegation of violating § 554(d) because the ALJ still makes the benefit decision independently and the OIG is not involved in the hearing process.   *Id.* at 17.   Therefore, Defendant maintains that Plaintiff cannot plead a successful claim for APA violations.

The APA provides for various procedures for every case "required by statute to be determined on the record."   5 U.S.C. § 554(a).   Plaintiff relies on the idea that redeterminations must follow the requirements in § 405(b) and argues that redeterminations must also be determined on the record.   Specifically, Plaintiff argues that the OIG determination of fraud must occur on the record and allow opposing evidence and objections.   *Pl.'s Resp.*, ECF No. 38, at 27. However, the Court already determined that the OIG's finding of fraud does not fall under the hearing requirements in § 405(b), and, thus, the APA requirements for formal adjudications do not apply to the OIG determination.   A plain reading of the APA statute shows that the procedural protections apply to formal adjudications only.   The OIG determination cannot be classified as a formal adjudication because there is no statutory mandate that the determination result from a hearing held on the record.   All of Plaintiff's allegations surround the inability to challenge this OIG determination of fraud, but none of these alleged violations can support a claim because the OIG determinations are not required to be on record.   *See Carter*, 2016 WL 6794790, at 16 (coming to the same conclusion).   Therefore, Plaintiff's allegations regarding § 554 and § 556 fail to state a claim.

The Court will make one point specifically on Plaintiff's allegations that the SSA violated the APA by not maintaining the firewall between the OIG and the SSA as mandated in 42 U.S.C.

§ 554(d).   This section dictates that the ALJ cannot "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency."   5 U.S.C. § 554(d).   Even if this section did apply to the redetermination process, the Court does not find that the SSA violated this firewall.   As stated throughout this opinion, the OIG finding of fraud and referral is merely a trigger that excludes evidence and starts the redetermination.   The OIG is not involved in the decision-making process and does not have an interest in the termination or continuation of claimants' benefits.   The OIG does not direct the ALJ to take any actions, and the ALJ remains independent in his or her own decision-making process.   The ALJ's decision is based on the sufficiency of the evidence left in the record and does not concern any of the allegations of fraud that the OIG flagged.   Any interaction between these two entities, moreover, was mandated by Congress in creating the OIG referral process.   The required exclusion of evidence after an OIG referral does not rise to the level of advice or participation in the SSA's final decision on benefits to maintain a claim for violating the firewall protections of § 554(d).

As the Court cannot find that the SSA violated any part of the APA, the Court cannot find that any actions were arbitrary or capricious.   Accordingly, the Court finds that the claims asserting violations of the APA must be **DISMISSED**.

## IV.    Conclusion

Based on the statutory construction of the redetermination process, Plaintiff's allegations regarding violations of both the Act and the APA fail to state a claim for which relief can be granted.   Additionally, the SSA has provided Plaintiff with the procedural protections required under the Due Process Clause of the Constitution.   The Court is sympathetic to the fact that Plaintiff's hardships come at no fault of his own.   However, the SSA provided Plaintiff with a

meaningful opportunity to prove that his disability still qualified for disability benefits.    Congress created the redetermination process to strike a balance between the improper award of benefits to those not considered disabled and the improper termination of benefits to those who properly qualified.    The Court finds that the SSA's implementation of these redeterminations follow the Due Process Clause, the requirements within the Social Security Act, and the requirements within the Administrative Procedure Act.    Therefore, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 36).

Within Plaintiff's Second Amended Complaint, Plaintiff requests this Court to reinstate the benefits originally awarded him in 2010.    *See Second Am. Compl.*, ECF No. 32, at 19 (prayer for relief).    However, Plaintiff's complaint does not include any cause of action challenging the ALJ's decision based on sufficiency of the evidence or any other fault.    Accordingly, the Court finds that Defendant's motion properly dismisses all of Plaintiff's current causes of action against Defendant, and the case will be **DISMISSED** in its entirety.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.


ENTER:        March 28, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE